**COMMERCIAL CARRIERS, Inc.**
v.
**The UNITED STATES.**

**UNITED TRANSPORTS, Inc.**
v.
**The UNITED STATES.**

Nos. 48571, 48599.

United States Court of Claims.
Jan. 11, 1955.

Harold G. Hernly, Memphis, Tenn., for plaintiffs. Wrape, & Hernly and Louis I. Dailey, Memphis, Tenn., were on the briefs.

Paris T. Houston, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The issue in each of these cases is what rate should be paid to the plaintiff for the transportation of jeeps. The plaintiffs are motor carriers.

In the Commercial Carriers case there is the added issue of whether that company is entitled to additional compensation for loading and unloading the cargo.

The jeeps were transported for the War Department during the year 1942.

Both plaintiffs operated during the period involved under land grant equalization agreements which stipulated that the shipments would be made at "the lowest net land grant charge lawfully available on such shipment from origin to destination at the time of the movement * * *."

During the year 1942 large quantities of jeeps were transported from the factories at Detroit, Michigan, and Toledo, Ohio, by rail in boxcars and by motor carriers. No new jeeps were permitted by the War Department to be shipped from either factory on flatcars for two stated reasons, (1) flatcars were in short supply and under orders of the Quartermaster Corps flatcars were reserved for moving tanks and other armament which could not be shipped in boxcars or by motor carriers, and (2) the Bureau of Ordnance refused to allow the shipment of new, assembled jeeps in flatcars because of the possibility of pilferage or damage to the vehicles during shipment.

In early 1942 the Ford Company loaded seven new jeeps on a flatcar in an effort to show the Government's chief inspector at the factory that jeeps could be shipped in that manner. But the inspector directed the company to remove the jeeps from the flatcar and to load them in boxcars.

Clearly in the circumstances flatcar service was not available at that time and the rates for that type of shipment would not govern.

As a matter of fact the rates for shipment in boxcars and flatcars of equal length were the same. The rate was not based upon the number of vehicles shipped but on the weight of the shipment. The only variation in shipping costs occurred when the total number of jeeps shipped in a car weighed less than the established minimum weight for a car. Thus if 12 jeeps were shipped in 50-foot boxcars it would require two cars. If they were shipped in 40-foot cars it would require three cars. There would be no difference in the rate as to ten of the jeeps but in 40-foot cars the third boxcar would contain only two vehicles, which would make the rate somewhat higher for the partially loaded car.

█ The amount due each plaintiff should be computed by taking the total number of jeeps that were shipped on any one date from a given factory to one destination, irrespective of bills of lading used, and applying to the lot of the net land-grant rates then in effect for the shipment of such vehicles in boxcars, either five or six to the car.

Thus, if 66 jeeps were transported from Dearborn, Michigan, to Atlanta, Georgia, on the same day there would be no extra charge because that number could be shipped in 11 fully loaded boxcars 50 feet in length. If the number shipped in the same way was 65 they could be shipped in 13 fully loaded 40-foot boxcars. In neither event would there be any extra charge.

On the other hand if the number shipped on the same date between the same points had been 68 vehicles, the number would not be divisible by either

five or six, and there would be a slight adjustment upward for the one partially loaded car.

■ We reject plaintiffs' contention that the individual bills of lading should govern. These were done as a convenience to the employees of the Government, who prepared the bills of lading, because the bills were typewritten and only 14 vehicles could be listed on a single bill. There were some bills that listed a different number, although most of them listed 14 vehicles. Manifestly they did not show the number of vehicles transported by the carrier from the factory to the same destination on any particular day. They were frequently shipped by scores and even hundreds. During the years 1942 to 1944, inclusive, according to official records of which we may take judicial knowledge, the two factories shipped more than 500,000 jeeps to the Army from Detroit and Toledo.

■ Both plaintiffs originally claimed additional compensation for loading and unloading the jeeps on the ground that these services would not have been included in the rail services had the vehicles been shipped by rail. Later the United Transports, Inc., dismissed this part of its claim.

The Army contracts for the procurement of jeeps from Willys-Overland and Ford companies provided that the manufacturer would load the jeeps for transportation from the factories without additional cost to the Government. The actual loading was done by employees of the factory.

The Army installations at destinations had crews available who unloaded the cars when shipment was by rail, and these crews were available for unloading the jeeps moving by Commercial Carriers. Thus the unloading by plaintiffs' drivers saved the defendant nothing.

We think that in the circumstances separate loading and unloading charges should not be allowed.

Plaintiffs will be given judgment computed by taking the entire lot of jeeps transported on the same date to the same destination, without regard to the number of bills of lading used, and applying to that particular day's shipment transported by one carrier from one factory to one destination using either five or six vehicles to the boxcar, whichever will produce the lower rate.

Entry of judgments will be suspended pending the filing by the General Accounting Office of a report showing the amounts due in accordance with this opinion.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, JJ., concur.